UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

TANYA HALLUM, Personal Representative of the Estate of Charlie Hallum,
TANYA HALLUM, Individually,
and JESSE HALLUM, Individually,

    Plaintiffs

v.                                                No. 17-cv-00007-MV-SCY

FOUR CORNERS OB-GYN, A PROFESSIONAL
LLP, and DR. MARECA PALLISTER, Individually,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Mareca Pallister, M.D.'s Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) [Doc. 20]. The Court, having considered the motion and relevant law, finds that the motion is well-taken and will be granted.

## BACKGROUND

The relevant facts as alleged in the Complaint are as follows. Plaintiffs Tanya Hallum, Charlie Hallum, and Jesse Hallum are residents of San Juan County. Doc. 1 at ¶¶ 3–5. Tanya Hallum is the Personal Representative of Charlie Hallum's estate. *Id.* at ¶ 4. On or about September 1, 2014, Tanya Hallum learned she was pregnant with Charlie Hallum and became a patient of Defendants Four Corners OB/GYN ("Four Corners") and Dr. Mareca Pallister. *Id.* at ¶ 16. Dr. Pallister classified Tanya Hallum's pregnancy as high risk. *Id.* at ¶ 18. Tanya Hallum followed her gynecologist's recommendations and consistently went in for pre-natal examinations. *Id.* at ¶ 17.

On or about January 6, 2015, Tanya Hallum went in to Four Corners's Aztec, New Mexico office for an unscheduled examination due to pain in her reproductive system and was seen by Nancy Rhein.[1]  Doc. 1 at ¶ 20–21.  Ms. Rhien checked Tanya Hallum's vital signs but did not examine her to determine the cause of her pain, nor did she refer to a doctor for further investigation of the pain.  *Id.* at ¶¶ 21–23.  Instead, Ms. Rhien informed Tanya Hallum that everything was fine.  *Id.* at ¶ 24.

Tanya Hallum's symptoms continued and she visited Four Corners's Durango, Colorado office on January 8, 2015.  *Id.* at ¶ 26.  Ms. Rhien again checked Tanya Hallum's vital signs but did not examine her or refer her to a doctor for further care.  *Id.* at ¶¶ 27–29.  Tanya Hallum was again told everything was fine with her pregnancy, and was not instructed to take any precautions.  *Id.* at ¶ 30.

On or about January 11, 2015, Tanya Hallum gave birth to Charlie Hallum, who was born approximately four months premature and only lived a short period.  *Id.* at ¶ 32.

At some point thereafter, Dr. Pallister advised Tanya Hallum to receive an Essure birth control device.  *Id.* at ¶ 33.  Tanya Hallum consented and did undergo a procedure, on or about March 19, 2015, to implant the Essure birth device.  *Id.* at ¶¶ 34–36.  However, on or about May 6, 2015, Tanya Hallum was informed Dr. Pallister had implanted three Essure birth devices, and they had to be removed.  *Id.* at ¶ 37.  As a result of the implantation of the three devices, Tanya Hallum underwent an unwanted hysterectomy.  *Id.*

Based on these allegations, on January 5, 2017, Plaintiffs commenced the instant action in New Mexico federal court pursuant to 28 U.S.C. Section 1332(a), which gives diversity jurisdiction to district courts for any civil action involving a complete diversity of citizenship

---

[1] Plaintiffs claim Ms. Rhien was an employee of Dr. Pallister and Four Corners.  Doc. 1 at ¶ 21.  However, Dr. Pallsiter denies this in an affidavit attached to her motion to dismiss.  Doc. 20-1.  Plaintiffs later acknowledged that, upon investigating, they learned that Dr. Pallister was not Ms. Rhien's supervisor.  Doc. 46 at 2.

between the parties and an amount in controversy of over $75,000. Doc 1. Plaintiffs are, and at all time relevant were, resides of San Juan County, in the State of New Mexico. *Id.* at ¶¶ 3–5. Dr. Pallister is a resident of La Plata County, in the State of Colorado and was a member and employed as a gynecologist at Four Corners, which has its principal place of business in Durango, Colorado. *Id.* at ¶¶ 7–9. The Complaint alleges medical malpractice (Counts I); negligent failure to publish safety protocols (Count II); wrongful death/loss of chance of life (Count III); loss of consortium (Count IV); unfair trade practices (Count V); medical negligence (Count VI); physician battery (Count VII); negligent infliction of emotional distress (Count VIII);[2] negligent hiring, retention, and training/supervision of Dr. Pallister (Count IX); and negligent hiring, retention, and training/supervision of Nancy Rhien (Count X). Plaintiffs seek punitive damages (Count XI). Except for Count VII directed towards Dr. Pallister specifically, and Counts VII, IX, and X referring only to a singular defendant, each count appears to be alleged against both Dr. Pallister and Four Corners.

On March 17, 2017, Dr. Pallister filed the instant motion to dismiss, under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction. Doc. 20. On June 26, 2017, Plaintiffs filed a response in opposition to Dr. Pallister's motion. Doc. 71. Dr. Pallister filed a reply on July 10, 2017. Doc. 81.

## **LEGAL STANDARD**

Motions to dismiss brought under Rule 12(b)(2) of the Federal Rules of Civil Procedure test a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. The Rule 12(b)(2) standard governing a motion to dismiss for lack of personal jurisdiction is well established. When a defendant challenges the court's jurisdiction, the

---

[2] Plaintiffs Motion for Leave to File an Amended Complaint Pursuant to Fed.R.Civ.P. 15 (Doc. 46) was granted in part and denied in part. As a result of the Court's ruling, this allegation of negligent infliction of emotional distress was dismissed. *See* Doc. 131, Order accepting Magistrate Judge's Report and Recommendation Doc. 130.

plaintiff bears the burden of demonstrating that jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted). In the preliminary stages of litigation, this burden is "light," and prior to trial a "plaintiff is only required to establish a prima facie showing of [personal] jurisdiction. *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992). The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or written materials, that would support jurisdiction over the defendant if true. *See OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Only the well-pled facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true. *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *See Wenz*, 55 F.3d at 1505.

The Due Process Clause of the Fourteenth Amendment protects a defendant from being judged by a court that does not have jurisdiction over the defendant. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 311 (1945). A judgment may only be rendered against a defendant if the court has personal jurisdiction over the defendant. *Id.* at 315. "To obtain personal jurisdiction over a nonresident defendant in a diversity action," the court must comply with the forum state's long-arm statute and "the exercise of jurisdiction [must] not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic*

*Diocese*, 48 P.3d 50, 54 (N.M. 2002). Thus, as long as the jurisdictional reach is constitutional, New Mexico's long-arm statute will be satisfied and the federal court will have personal jurisdiction over the defendant.

To exercise personal jurisdiction that does not violate due process, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316. The Due Process clause ensures that potential defendants have some assurance of where their conduct will render them liable to suit. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). The "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being hauled into court there." *Id.* Accordingly, a nonresident defendant is subject to New Mexico's jurisdiction if the defendant's minimum contacts are sufficient and if being liable to suit in New Mexico does not offend traditional notions of fair play and substantial justice.

To determine whether a defendant has sufficient minimum contacts, the court looks to two types of personal jurisdiction: (1) general and (2) specific. General jurisdiction arises for nonresidents "when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To have specific jurisdiction over a nonresident defendant, the activity of the defendant, whether occasional or a single act, must give rise to the episode in suit and the defendant must have availed herself to such a suit. *Id.* at 2849.

## **DISCUSSION**

In the instant case, Defendant moves to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, arguing that she has no minimum contacts in New Mexico. Doc. 20. As set forth

herein, having considered the merits of Dr. Pallister's motion and the subsequent response and reply, this Court finds that it cannot exercise personal jurisdiction over Dr. Pallister, and thus that the motion is well-taken and will be granted.

### A. Plaintiffs fail to show that Dr. Pallister had the requisite minimum contacts in New Mexico.

Plaintiffs have offered no evidence that Dr. Pallister ever had any contact or presence in New Mexico, and thus fail to establish, as they must, that Dr. Pallister has sufficient minimum contacts with New Mexico. As discussed above, to satisfy the Due Process Clause, a defendant must have minimum contacts with the forum state. The minimum contacts standard "protects the defendant against the burdens of litigating in a distant or inconvenient forum [and] acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen*, 444 U.S. at 291–92. A plaintiff may satisfy the minimum contacts standard by demonstrating that the court has either general or specific jurisdiction over the defendant. *Goodyear,* 564 U.S. at 919. "A court may assert general jurisdiction over [nonresidents] . . . when their affiliations with the State are so continuous and systematic" that the state essentially has all-purpose jurisdiction over the defendant. *Id.* On the other hand, specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy[.]'" *Id.* Specific jurisdiction requires that a plaintiff show that the defendant "purposefully [availed] his activities at residents of the forum, and the litigation [that] results from alleged injuries 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1090–91 (citing *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 472 (1985)). For a defendant to avail himself to personal jurisdiction, the plaintiff must establish "not only that the defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that the defendants undertook intentional actions that were expressly

aimed at that forum state." *Dudnikov*, 514 F.3d 1063, 1077. If a plaintiff establishes that the forum state had either general or specific jurisdiction over the defendant, then the minimum contacts standard is met and the court may exercise personal jurisdiction over the defendant.

Here, Plaintiffs have not established that New Mexico has general or specific jurisdiction over Dr. Pallister. The Complaint alleges that Dr. Pallister's residence is located in Colorado. Doc. 1 at ¶ 8. There is no evidence that Dr. Pallister had any continuous or systematic contact with New Mexico and there is seemingly no reason established in the Complaint for Dr. Pallister to be considered "at home" in the forum state. On the contrary, in support of her motion, Dr. Pallister submitted an affidavit swearing that she is licensed to practice medicine in Colorado, has never been licensed or practiced medicine in New Mexico, has been a resident of Colorado for all times relevant to the Complaint and has never resided or owned property in New Mexico, and has not affirmatively transacted business in New Mexico. Doc. 20-1 at ¶¶ 3–6. Dr. Pallister further swore that she performed all of her care and treatment of Tanya Hallum in Colorado, had no involvement in managing Tanya Hallum's care, and did not supervise Ms. Rhien's treatment or otherwise have anything to do with Four Corners's Aztec, New Mexico clinic. *Id.* at ¶¶ 6–7.

In response to Dr. Pallister's motion, Plaintiffs have not submitted any evidence to refute her affidavit swearing that she had nothing to do with the Four Corners Clinic located in New Mexico. Nonetheless, Plaintiffs argue that Dr. Pallister is subject to personal jurisdiction in New Mexico under the long-arm statute because she had "business transactions" in New Mexico and committed a tort in New Mexico. Doc. 71 at ¶¶ 4–5.

Though not alleged in the Complaint or supported by evidence, Plaintiffs now argue that Dr. Pallister "solicit[ed] further business . . . from Tanya Hallum in New Mexico." Doc. 71 at ¶ 12. The fact that Dr. Pallister may have communicated with Tanya Hallum by phone, after

establishing a relationship with her in Colorado, is not enough to subject her to personal jurisdiction in New Mexico. *Valley Wide Health Servs., Inc. v. Graham*, 738 P.2d 1316, 1317–18 (N.M. 1987) (holding that a Colorado doctor's phone call to a New Mexico resident was insufficient to subject Colorado health care clinic to personal jurisdiction of New Mexico court where the New Mexico resident's child was taken to Colorado to be seen by a doctor, the treatment was originally prescribed in Colorado, and the doctor's phone call resulted from a doctor-patient relationship established in Colorado).

Though not alleged in the Complaint or supported by evidence, Plaintiffs further argue that Dr. Pallister "transacted business" in New Mexico based on advertising by Four Corners to attract New Mexico residents, and that Dr. Pallister benefitted from these advertisements because she is a member and an "owner"[3] of Four Corners. These alleged advertisements took the form of radio and printed "business advertisements." Doc. 71 at ¶ 3. The response goes on to state that Four Corners and Dr. Pallister "sought out the Defendants," likely intending to mean Plaintiffs, in New Mexico through "purposeful advertisement," that Dr. Pallister was "an owner who was involved in the decisions to promote Four Corners OB/GYN to New Mexico residents," and that Dr. Pallister "not only promoted herself to New Mexico residents, but she directly received monetary proceeds from the plaintiffs and other individual New Mexico residents" resulting from the "care received in New Mexico in her role as an owner of Four Corners OB/GYN." *Id.* at ¶¶ 19–21.

This new claim of being an "owner" of Four Corners, not supported by evidence or alleged in the Complaint, contradicts Plaintiffs's claim that Dr. Pallister is an employee whom

---

[3] Plaintiffs also claim that Dr. Pallister was "an owner who was involved in the decision to promote Four Corners OB/GYN to New Mexico residents and provide the opportunity for care to her patients in New Mexico." [Doc. 71 ¶ 20]. These allegations regarding Dr. Pallister's relationship with Four Corners and her alleged authority do not appear in the Complaint. [Doc. 1]. Rather, the Complaint merely states Dr. Pallister "was a member" and "employed as a gynecologist at" Four Corners OB/GYN. [*Id.* ¶ 9].

Four Corners negligently hired, supervised, and/or trained. Doc 1 at ¶¶ 96–106 (Count IX). Further, even if Four Corners advertised to New Mexico residents and Dr. Pallister was an owner, the outreach by Four Corners to New Mexico residents would not be imputed to Dr. Pallister. *See Keton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781, n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . ."); *Zavala v. El Paso Cty. Hosp. Dist.*, 172 P.3d 173, 184 (N.M. Ct. App. 2007) (Texas hospital's treatment of some New Mexico residents was not, by itself, sufficient to establish continuous and systematic contact with New Mexico, nor did New Mexico have jurisdiction over Texas doctors who were merely listed as the accepting physician); *Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1348–49 (D.N.M. 1994) (It would violate due process to hold a shareholders subject to the personal jurisdiction of an out-of-state forum merely because the corporation in which the shareholder invested does business there.). There is thus no factual basis upon which the Court can assert general jurisdiction over Dr. Pallister because she does not have the necessary continuous or systematic contacts with New Mexico.

Similarly, Plaintiff does not offer any evidence to support the exercise of specific jurisdiction over Dr. Pallister. The events in the Complaint all took place in Colorado, save a single prenatal visit to Ms. Rhien in the Aztec, New Mexico office. But Dr. Pallister was not present for Ms. Hallum's visit to Ms. Rhien, did not supervise Ms. Rhien, and was not otherwise involved with Ms. Hallum's treatment in the Aztec, New Mexico office. *See* Doc. 20-1. Not alleged in the Complaint or supported by evidence, Plaintiffs add in their Response that Dr. Pallister "purposefully initiated activities in the state of New Mexico by reaching out to Plaintiffs after January 6, 2015 to undergo further treatments with Dr. Pallister so Dr. Pallister could administer the Essure implantation." Doc. 71 at ¶ 10. As to the commission of a tort within the

State of New Mexico, Plaintiffs now claim that "their causes of action after January 2015 arose from Dr. Pallister's transaction of business in New Mexico . . . based on plaintiff's allegation that, but for Dr. Pallister's solicitations of further business from the plaintiffs, Tanya Hallum would not have sought the Essure implantation business that Dr. Pallister solicited from Tanya Hallum in New Mexico . . . ." *Id.* at ¶ 12. However, Dr. Pallister initiated treatment of Tanya Hallum prior to January 2015—as described by Plaintiffs in the Complaint—and any subsequent interactions were based on the doctor-patient relationship already established in Colorado. Doc. 1 at ¶¶ 16–20. Dr. Pallister's alleged actions do not avail her to the State of New Mexico, nor does the Complaint arise from an action committed in New Mexico, because the implantation of the Essure devices took place in Colorado. The Complaint thus provides no basis for personal jurisdiction, as it does not establish that Defendant had any minimum contacts with the forum state.

### B. The Court need not reach the second prong of the personal jurisdiction test.

As Plaintiffs did not establish a prima facie showing that Dr. Pallister meets the minimum contacts standard for New Mexico, it is not necessary to proceed to the next step of the analysis.

### CONCLUSION

For the foregoing reasons, this Court has no personal jurisdiction—general or specific—over Dr. Pallister and it would offend traditional notions of fair play and justice to render a judgement against her.

**IT IS THEREFORE ORDERED** that Dr. Pallister's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2) [Doc. 20], is **GRANTED.**

DATED this 28th day of September, 2018.

_____
MARTHA VAZQUEZ
United States District Judge