TANYA HALLUM, Personal Representative of the Estate of Charlie Hallum,
TANYA HALLUM, Individually,
and JESSE HALLUM, Individually,

     Plaintiffs

v.                         No. 17-cv-00007-MV-SCY

FOUR CORNERS OB-GYN, A PROFESSIONAL
LLP, and DR. MARECA PALLISTER, Individually,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Four Corners, OB/GYN's Motion for Partial Dismissal of Plaintiffs' Claims Pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 19. The Court, having considered the motion and relevant law, finds that the motion is well-taken in part and will be granted in part and denied in part.

## BACKGROUND

Plaintiffs Tanya Hallum and Jesse Hallum are residents of San Juan County. Doc. 1 (Complaint) at ¶¶ 3–5. Tanya Hallum is the Personal Representative of Charlie Hallum's estate. *Id.* at ¶ 4. On or about September 1, 2014, Tanya Hallum learned she was pregnant with Charlie Hallum and became a patient of Defendants Four Corners OB/GYN ("FC") and Dr. Mareca Pallister. *Id.* at ¶ 16. FC is a professional LLP in a Colorado corporation. *Id.* at ¶ 7. Dr. Pallister was a member of FC and employed as a gynecologist at FC. *Id.* at ¶ 9. Dr. Pallister classified Tanya Hallum's pregnancy as high risk. *Id.* at ¶ 18. Tanya Hallum followed her gynecologist's recommendations and consistently went in for pre-natal examinations. *Id.* at ¶ 17.

On or about January 6, 2015, Tanya Hallum went in to FC's Aztec, New Mexico office for an unscheduled examination due to pain in her reproductive system and was seen by Nancy Rhien. Doc. 1 at ¶¶ 20–21.  Ms. Rhien is an employee of FC.[1]  *Id.* at ¶ 21.  Ms. Rhien checked Tanya Hallum's vital signs but did not examine her to determine the cause of her pain, nor did she refer her to a doctor for further investigation of the pain.  *Id.* at ¶¶ 21–23.   Instead, Ms. Rhien informed Tanya Hallum that everything was fine.  *Id.* at ¶ 24.

Tanya Hallum's symptoms continued and she visited FC's Durango, Colorado office on January 8, 2015.  *Id.* at ¶ 26.  Ms. Rhien again checked Tanya Hallum's vital signs but did not examine her or refer her to a doctor for further care.  *Id.* at ¶¶ 27–29.  Tanya Hallum was again told everything was fine with her pregnancy, and was not instructed to take any precautions.  *Id.* at ¶ 30.

On or about January 11, 2015, Tanya Hallum gave birth to Charlie Hallum, who was born approximately four months premature and "lived for a short duration."  *Id.* at ¶ 32.

At some point thereafter, Dr. Pallister advised Tanya Hallum to receive an Essure birth control device.  *Id.* at ¶ 33.  Tanya Hallum consented and underwent a procedure, on or about March 19, 2015, to implant the Essure birth device.  *Id.* at ¶¶ 34–36.  However, on or about May 6, 2015, Tanya Hallum was informed that Dr. Pallister had implanted three Essure birth devices, which had to be removed.  *Id.* at ¶ 37.  As a result of the implantation of the three devices, Tanya Hallum underwent an unwanted hysterectomy.  *Id.*

Based on these allegations, Plaintiffs commenced the instant action on January 5, 2017. The Complaint alleges medical malpractice (Count I); negligent failure to publish safety protocols (Count II); wrongful death/loss of chance of life (Count III); loss of consortium (Count IV); unfair

---

[1] Although the Complaint alleges that Ms. Rhien was also an employee of Dr. Pallister, Plaintiffs later withdrew this assertion upon learning that Dr. Pallister did not employ Ms. Rhien.  *See* Doc. 46.

trade practices (Count V); medical negligence (Count VI); physician battery (Count VII); negligent infliction of emotional distress (Count VIII);[2] negligent hiring, retention, and training/supervision of Dr. Pallister (Count IX); and negligent hiring, retention, and training/supervision of Nancy Rhien (Count X). Plaintiffs seek punitive damages (Count XI). Except for Count VII directed towards Dr. Pallister specifically, and Counts VII, IX, and X referring only to a singular defendant, each count appears to be alleged against both Dr. Pallister and FC.

Dr. Pallister filed a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 20. On September 28, 2018, this Court granted the Motion. Doc. 132. Therefore, the only claims that remain are as to FC.

On March 17, 2017, FC filed this partial motion to dismiss, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Doc. 19. On April 17, 2017, Plaintiffs filed a response in opposition to FC's motion. Doc. 42. FC filed a reply on June 1, 2017. Doc. 45.

## LEGAL STANDARD

### I. Rule 12(b)(6)

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's

---

[2] Plaintiffs' Motion for Leave to File an Amended Complaint Pursuant to Fed. R. Civ. P. 15 (Doc. 46) was granted in part and denied in part. As a result of the Court's ruling, this allegation of negligent infliction of emotional distress was dismissed. *See* Doc. 131, Order accepting Magistrate Judge's Report and Recommendation Doc. 130.

favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (citation omitted). In keeping with these two principles, the Court explained:

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

## II.    Choice of Law

When a plaintiff invokes a federal district court's diversity jurisdiction, as is the case here, the district court looks to the forum state's choice-of-law rules to determine which state's substantive law to apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). The first step in New Mexico choice-of-law analysis is to characterize the claim by "area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue." *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006).

The Plaintiffs' Complaint relies not on a contract, but on a common-law theory of tort liability.  When a claim is categorized as a tort, "New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Id.*  Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred.  *Id.* (citing *First Nat'l Bank in Albuquerque v. Benson*, 553 P.2d 1288 (N.M. Ct. App. 1976)).  The place of the wrong has been clarified to be the "location of the last act necessary to complete the injury." *Torres v. State*, 894 P.2d 386, 390 (N.M. 1995) (citing *Wittkowski v. State*, 710 P.2d 93, 95 (N.M. Ct. App. 1985), *cert. quashed*, 708 P.2d 1047 (N.M. 1985), *overruled on other grounds by Silva v. State*, 745 P.2d 380, 385 (N.M. 1987)).

Under *Torres*, New Mexico's place-of-wrong rule is not utilized if such application would violate New Mexico public policy.  *Id.*; *see also In re Estate of Gilmore*, 946 P.2d 1130, 1135 (N.M. Ct. App. 1997) ("[P]olicy considerations may override the place-of-the-wrong rule."). However, a court should "begin with a strong presumption in favor of application of the place-of-

wrong rule, but [] not close [its] eyes to compelling policy arguments for departure from the general rule in specific circumstances." *Gilmore*, 946 P.2d at 1136.

## III. Documents Outside of the Pleadings

In support of its motion to dismiss, especially as related to Counts III (Wrongful Death/Loss of Chance of Life) and Count IV (Loss of Consortium), FC attaches Exhibit A, which is a certificate of Charlie Hallum's death estimating the gestational age as 21 weeks and noting that he "[d]ied during labor, after [the] first assessment." Doc. 19-1, Ex. A. As noted above, on a 12(b)(6) motion, the court considers only "the four corners" of the plaintiff's complaint, as it is tasked with "reviewing the sufficiency of the complaint alone." *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Thus, the general rule is that the court cannot consider materials attached to a defendant's motion to dismiss without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(b). Exceptions to this rule include: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint and central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Gee*, 627 F.3d at 1186 (internal citations omitted). When one of these exceptions applies, a court may take judicial notice of some facts without triggering conversion of a 12(b)(6) motion to a motion for summary judgment. *Id.*; *Tal v. Hogan*, 453 F.3d 1244, 1264 fn.24 (10th Cir. 2006).

Under the first and second exceptions, the court may consider not only the complaint itself, but also attached exhibits, *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994), and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A defendant may submit for

consideration an "indisputably authentic copy" of a document referred to by plaintiff in the complaint that is "central to" the plaintiff's claim. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002) (noting that a court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Under the third exception, a court may "take judicial notice of its own files and records, as well as facts which are a matter of public records." *Schendzielos v. Silverman*, 139 F. Supp. 3d (2015) (citing *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2011)). While the court may take judicial notice of documents that are a matter of public record, it may not take the facts asserted in the filings to be true. *Id.* In other words, a court may take notice of public records to show their contents, but not to prove the truth of matters asserted therein. *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, 698 F. Supp. 2d 1259, 1263 (D. Colo. 2010) (citing *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

## DISCUSSION

### I.      The Court will Apply Colorado Law.

FC argues that New Mexico courts follow the doctrine of *lex loci delicti commissi* in determining which jurisdiction's law applies to a tort action and that, because the harm here occurred in Colorado, Colorado law applies to Plaintiffs' claims. Doc. 19 at 7 (citing *Montaño v. Frezza*, 352 P.3d 666 (N.M. Ct. App. 2017), *rev'd on other grounds* (N.M. Mar. 13, 2017)). Plaintiffs disagree, arguing that New Mexico law applies to this case.

Plaintiffs, however, make no cognizable argument for why New Mexico law should apply. They state that "Defendants have misread the *Torres* application to claim that Colorado law should apply to a New Mexico case," without considering that *Torres* was an example of a public policy exception to New Mexico's application of the place-of-wrong rule. Doc. 42 at 7–8. *Torres* was a wrongful death action against the State of New Mexico for failure to investigate a crime in New Mexico that resulted in murders in California. 894 P.2d 386. Although the deaths occurred in California, the Supreme Court of New Mexico applied New Mexico law under a public policy exception because the action was against government officials. *Id.* at 390 ("[p]ublic policy dictates that New Mexico law determine the existence of duties and immunities on the part of New Mexico officials.") (citing *Wittkowski*, 710 P.2d at 96).

Plaintiffs also state that "all of their causes of action lie within the wake of Defendant's New Mexico commercial activities." Doc. 42 at 3. They attempt to draw a direct parallel to *Cronin v. Sierra Medical Center*, 10 P.3d 845 (Ct. App. N.M. 2000), stating that the cases involve "similar issues." *Id.* at 1. Although both cases involve a medical malpractice action brought against a hospital, treating physicians, and physicians' professional corporation, the issue in *Cronin* was whether the state court had personal jurisdiction over the defendants who resided in Texas. The case was dismissed for lack of personal jurisdiction as to all but the Hospital "because Plaintiffs' causes of action lie within the wake of Hospital's intentional, purposeful, and persistent transaction of business in New Mexico." *Cronin*, 10 P.3d at 847. In *Cronin*, however, the Court applied the place-of-wrong rule and "assume[d] without deciding" that the tort was committed in New Mexico. *Id.* at 850. The Court went on to conduct an analysis of personal jurisdiction, which is not at issue in this case as FC has conceded that this Court has jurisdiction.

As discussed above, the New Mexico Supreme Court has adopted the "place-of-the-wrong" rule in choice of law cases involving tort actions. *Terrazas*, 142 P.3d at 377. Plaintiffs' injuries involve the premature delivery of Charlie, the death of Charlie, Tanya Hallum's sterilization and hysterectomy, and the resulting emotional suffering. Charlie was delivered and died in Colorado, and both the sterilization procedure and the hysterectomy were performed in Colorado. Because Plaintiffs' injuries took place in Colorado, under New Mexico choice of law rules, Colorado law governs Plaintiffs' claims. Plaintiffs do not argue that a public policy exception should be applied here, and this Court has not identified any reason why applying Colorado law would violate New Mexico public policy under the circumstances of this case. Accordingly, this Court will apply Colorado law to Plaintiffs' claims.

## II. Failure to State Claims

Pursuant to 12(b)(6), FC contends that all but Count I should be dismissed for failure to state a claim upon which relief can be granted. The Court will address each claim in turn.

### A. The Medical Malpractice Claim (Count I) May Proceed as it Pertains to FC's Vicarious Liability for Physician Assistant Nancy Rhien's Conduct.

In Count I, Plaintiffs bring medical malpractice claims against FC based on the medical care provided by both Dr. Pallister and Physician Assistant Nancy Rhien. FC argues that, to the extent that these claims are based on the medical care provided by Dr. Pallister, as opposed to Rhien, these claims fail, because a professional medical corporation cannot be held vicariously liable for the acts of its physicians. FC further argues that only Tanya Hallum, as the patient of FC, has standing to bring a medical malpractice claim, and thus that the medical malpractice claims alleged on behalf of Jesse and Charlie Hallum must be dismissed. Doc. 19 at 8. The Court agrees with both arguments.

First, a medical malpractice action is a particular type of negligence action. *Greenberg v. Perkins*, 845 P.2d 530, 534 (Colo. 1993). Here, FC employed a physician, Dr. Mareca Pallister [Doc. 1 at ¶ 9], and a physician's assistant, Nancy Rhien [*Id.* at ¶ 21], who provided the medical care in question in this action. Plaintiffs must show that the care provided by the defendant fell below the degree of knowledge, skill and care used by other doctors practicing in the same field, in the same locality and at the same time. *See* Colorado Civil Jury Instruction 15:1 (2018 ed.); s*ee also Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo. 2001).

To prevail on a medical malpractice claim against FC, Plaintiffs must pursue the claim under a theory of vicarious liability as to FC. However, Colorado law is clear and Colorado has adopted the "corporate practice of medicine doctrine" which holds that, because it is impossible for a corporation to perform medical actions or to be licensed to practice medicine, it is equally impossible for a professional medical corporation to be held vicariously liable for the acts of its physicians. *Estate of Harper ex rel. Al-Hamim v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275 (Colo. Ct. App. 2006) (citing *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002)). The "only exception to the doctrine has been when a hospital has committed independent acts of negligence." *Id.* at 276. Although *Russell* created another exception, as explained in *Harper*, the General Assembly later amended Colorado statute to make clear that "while physicians may be employed by hospitals, and by professional service corporations owned by physicians, these legal relationships do *not* expose professional corporations and hospitals to vicarious liability for the negligent acts of their medical professionals." *Id.* (citations omitted).

Here, it is undisputed that FC is a corporation [*Id.* at ¶ 7], and thus cannot be held vicariously liable for a physician's negligence under Colorado law. It follows that Plaintiffs cannot

state a claim of medical malpractice against FC based on the allegedly negligent care provided by Dr. Pallister.

Plaintiffs' arguments to the contrary are unavailing. As an initial matter, Plaintiffs cite New Mexico law explaining that a physician's liability to a third party is relative to foreseeability, duty, and professional standards of medical care. Doc. 42 at 9–11. This case law is irrelevant. First, Colorado law, not New Mexico law, must be applied in this action. Second, because this partial motion to dismiss is only about FC's liability to Plaintiffs, case law regarding a *physician's* liability rather than an employer or corporation is not at issue here. Accordingly, the Court dismisses the claims set forth in Count I that are based on Dr. Pallister's conduct.

Next, Plaintiffs have failed to state a medical malpractice claim on behalf of either Jesse or Charlie Hallum. The Complaint's only factual allegations against FC relate to Tanya Hallum's obstetrics care. *See* Doc. 1 at ¶ 10. Plaintiffs have not alleged facts that, if proven, would establish any of the elements of medical malpractice, namely, that (1) FC owed Jesse or Charlie Hallum a legal duty; (2) FC breached that duty; (3) Jesse or Charlie Hallum suffered injury; and (4) there is a causal relationship between the breach and the injury. *See, e.g.*, *Day v. Johnson*, 255 P.3d 1064, 1068–69 (Colo. 2011) (en banc); *see also Ryder v. Mitchell*, 54 P.3d 886 (Colo. 2002) (holding that a child therapist did not owe a duty of care to her patients' parents). Accordingly, the Court dismisses the claims set forth in Count I that are brought on behalf of Jesse and Charlie Hallum. Count I remains viable to the extent that it alleges medical malpractice claims by Tanya Hallum against FC based on the allegedly negligent care provided by Ms. Rhien.

**B. The Court Will Not Dismiss the Negligent Failure to Publish Safety Protocols Claim (Count II) and Medical Negligence Claim (Count VI) as Duplicative of Count I (Medical Malpractice), Nor for Failure to Meet the Pleading Standard.**

FC argues that Counts II and VI are duplicative of Count I and should therefore be dismissed. Doc. 19 at 9–10. Plaintiffs respond that each of the three claims "share some factual

information" but are distinct. Doc. 42 at 8–9. Specifically, Plaintiffs state that "Count II is distinct from Count I, in that Count II includes an additional failure to provide safety procedures to prevent further injury within their duty of care, when complications arise." *Id.* at 9. Plaintiffs also state that Count VI is distinct from Count I "in that this claim alleges and relies upon the fact that Defendants negligently failed to give consideration to their duty in providing well qualified specialists in a locality that required well qualified specially trained employees." *Id.*

Duplicative claims may be dismissed pursuant to Rule 12(b)(6) or may be stricken pursuant to Rule 12(f) as "redundant, immaterial, impertinent, or scandalous" for the sake of judicial efficiency. *See Sw. re, Inc. v. G.B. Invs. Reins. Co., Ltd.*, No. 10-856 BB/WPL, 2011 WL 13114921 at *1 (D.N.M. June 17, 2011). "Claims are duplicative when they are substantially the same as other claims in the suit." *Id.* However, even if the court were to find two claims duplicative, the plaintiff is permitted to plead alternative theories of recovery. The Federal Rules of Civil Procedure provide that "a party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses." Fed. R. Civ. P. 8(d)(2). Therefore, the Court will not dismiss Counts II and VI as they can otherwise be pled in the alternative, even though Plaintiffs did not plead them as such here.

The Court also finds that Plaintiffs meet the necessary pleading standard for Counts II and VI. Count II alleges that defendants "were negligent in failing to establish appropriate protocols in the management and assessment of high-risk patients presenting with pregnancy complications," [Doc. 1 at ¶ 48], "failed to recommend follow up care to Tanya Hallum" [*Id.* at ¶ 52], and "were negligent in failing to establish or follow appropriate protocols in the implantation of birth control devices" [*Id.* at ¶ 55].

Count VI alleges that defendants "held themselves out as specialists" who were "under a duty to posses and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified specialists practicing under similar circumstances. The physicians failed to do so and were negligent." Doc. 1 at ¶ 84. The claim further alleges that FC was "under a duty to use ordinary care to avoid or prevent what a reasonably prudent person would foresee as an unreasonable risk of injury to another" [*Id.* at ¶ 85], that defendants "knew or should have known that employees with other qualifications were needed for Plaintiff to receive proper care" and failure to refer led "Defendants [to breach] their duties to Plaintiff and [act] negligently" [*Id.* at ¶ 86]. Plaintiffs allege that defendants' actions both "caused Plaintiff Tanya Hallum's catastrophic injuries" [*Id.* at ¶ 87] and "allowed Plaintiff Tanya Hallum's condition to worsen, resulting in negligent surgery, and later, an unwanted hysterectomy" [*Id.* at ¶ 88].

To state a *prima facie* claim of negligence under Colorado law, a plaintiff must allege facts that, if proven, would establish (1) the existence of a legal duty; (2) that the defendant breached that duty; (3) that breach was the proximate cause of the plaintiff's injuries; and (4) what were the resulting damages. *Observatory Corp. v. Daly*, 780 P.2d 462, 465 (Colo. 1989). When a claim alleges negligence against a professional, that professional is judged according to the tenets of the field to which that individual belongs. *United Blood Servs. v. Quintana*, 827 P.2d 509, 520 (Colo. 1992). To be successful, the plaintiff would have to show that the professional's conduct fell below the standard of care appropriate to the profession, which generally requires expert testimony to assist the trier of fact in determining the applicable standards because, in most cases, the standards are not within the purview of ordinary persons. *Id.* Thus, courts require plaintiffs, as part of a professional negligence claim, to establish the appropriate standard of care.

Here, Plaintiffs' Complaint, as summarized above, sufficiently sets forth allegations asserting that FC, Ms. Rhien, and Dr. Pallister failed to establish safety protocols and failed to provide adequate medical care to Tanya Hallum. Plaintiffs allege that Defendants had a duty to provide adequate medical care to Ms. Hallum, that no follow up care was provided to Ms. Hallum when she presented at FC with complications, and that this caused the premature birth of Charlie Hallum. Therefore, Counts II and VI will not be dismissed.

Under the corporate practice of medicine doctrine discussed above, to the extent that Counts II and IV state claims against FC based on the independent medical judgment of Dr. Pallister, as opposed to that of Rhien, those portions of Count II and VI are dismissed with prejudice.

### C. The Court will Not Dismiss the Wrongful Death/Loss of Chance of Life Claim (Count III).
#### a. Wrongful Death

FC argues that Plaintiffs' wrongful death claims should be dismissed for two reasons. First, FC argues that because Colorado law does not permit claims for wrongful death in the instance of fetal death, and because Charlie Hallum was not born alive, Plaintiffs cannot state a wrongful death claim. Doc. 19 at 12. Second, FC argues that Tanya and Jesse Hallum cannot bring claims "on behalf of the Estate of Charlie Hallum" without having obtained "the required appointment as a personal representative under Colorado Probate Code." Doc. 19 at 15, f.8 (citing *Hill v. Martinez*, 87 F. Supp. 2d 1115, 1121–22 (D. Colo. 2000)). The Court disagrees with both arguments.

First, Colorado law determines "personhood" by live birth. *See Gonzales*, 190 P.3d at 830. A fetal death is not actionable under the Colorado Wrongful Death Act because the terms contemplate only recovery for the death of a "person," which does not include a fetus not born alive. Colo. Rev. Stat. § 13–21–202. In support of its argument that Plaintiffs cannot state a wrongful death claim, FC attaches as an exhibit Charlie Hallum's Certificate of Death, which states

that Charlie Hallum "died during labor, after [the] first assessment" at 21 weeks gestational age. Ex. A.  FC argues that the Certificate of Death establishes that Charlie Hallum was not born alive, and requests that the Court take judicial notice of the Certificate pursuant to Federal Rules of Evidence 201(b)(2), "because it is a matter of public record and is a fact that is not subject to reasonable dispute and it is from a source whose accuracy cannot reasonably be questioned."  Doc. 19 at 5, fn.5.  Vital statistics records, including death records, however, are confidential under Colorado state statute.  Colo. Rev. Stat. § 25-2-117(1) (2018).  As Charlie Hallum's Certificate of Fetal Death is a vital record, considered confidential under Colorado statute, the court cannot, as FC requests, take judicial notice of it as a public record.  Nor did Plaintiffs incorporate the Certificate of Fetal Death by reference in their complaint.  *See GFF Corp.*, 130 F.3d at 1385.  The Court may, however, take judicial notice of the Certificate of Death because Plaintiffs do not challenge its authenticity and it is not reasonably subject to question.  *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, 2003 WL 193502, at *8 (S.D.N.Y. Jan. 29, 2003) (finding that a court could take judicial notice of the date of death based on uncertified copies of death certificates offered by the defendants in deciding a Rule 12(b)(6) motion to dismiss).

This, however, is not the end of the inquiry.  The statement in the Certificate of Death that Charlie Hallum "died during labor, after [the] first assessment" at 21 weeks gestational age is too vague to conclusively establish whether Charlie was born alive.  Further, Plaintiffs clearly dispute that Charlie Hallum was stillborn; to the contrary, they specifically allege that Charlie was born alive, "lived for a short duration," and "[w]ith proper care [] would have survived past his January 11, 2015 birth."  Doc. 1 at ¶¶ 32, 67.  Accordingly, while this Court may take notice of the Certificate of Death, it may not do so for the purpose of proving that Charlie "died during labor," rather than sometime after he was born.  *See, e.g.*, *Bohrer v. County of San Diego*, 104 Cal.App.3d

155 (Cal. App. 1980) (holding that the court erred in taking judicial notice of the cause of death on the decedent's death certificate where the cause was in dispute). Because the Complaint alleges that Charlie Hallum was born alive, and because the Certificate of Death provides no evidence to the contrary of which this Court may take judicial notice, Plaintiffs have properly stated a wrongful death claim.

Next, although FC argues that Tanya and Jesse Hallum may not properly bring claims on behalf of the Estate of Charlie Hallum, Plaintiffs state in the Complaint that Tanya Hallum is the Personal Representative of Charlie Hallum's estate. Indeed, she is listed as such in the action. Doc. 1 at ¶ 4. The Court thus must accept that Tanya Hallum properly represents the estate of Charlie Hallum and has not misrepresented herself in these proceedings. Accordingly, FC has provided no basis for this Court to dismiss Plaintiffs' wrongful death claim.

### b. Loss of Chance of Life

Also in Count III, Plaintiffs bring a claim for "Loss of Change [*sic*] of Life," [Doc. 1 at 8] which is a claim separate from that of wrongful death under Colorado law. FC makes several arguments why this claim should be dismissed, recharacterizing it as a survival action. Doc. 19 at 14–17. First, it argues that there is no right of action for loss of chance of life because the decedent was a fetus not born alive and therefore not a "person" under Colorado's statute. *Id.* at 15–16. Second, FC argues that even if there was a survival action, none of the damages claimed are available under the survival statute. *Id.* at 16 (citing Colo. Rev. Stats. §§ 13–21–102.5(2)(b), 13–20–101(1)). Third, FC argues that loss of a chance "is a theory that is inconsistent with and unavailable under Colorado law." *Id.* Plaintiffs do not address these arguments in their response. Doc. 42 at 11–12. Their Complaint asserts that Charlie Hallum would have survived past his date of birth had there been proper medical care. Doc. 1 ¶ 67.

Under New Mexico law, "loss of chance" or "lost chance" is a claim that there was a chance an individual would have been better off with adequate care but, because of negligence, this chance has been lost. *See Albers v. Schultz*, 975 P.2d 1279, 1282 (N.M. 1999). This theory does not require the plaintiff to allege that the malpractice *caused* his or her entire injury, but rather that the "health care provider's negligence reduced the chance of avoiding the injury actually sustained." *Id.* at 1283. This theory has been met with resistance in other jurisdictions but is, in New Mexico, "a separate and distinct injury established by the same basic elements as any other medical malpractice tort." *Id.* (citing *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 592 (Nev. 1991)); *see also Baer v. Regents of Univ. of Cal.*, 972 P.2d 9, 12 (N.M. Ct. App. 1998). The difference between loss of chance and other medical malpractice actions is "only in the nature of the harm for which relief is sought." *Id.* at 1284.

Unlike New Mexico courts, a survey of Colorado law indicates that Colorado does not allow for loss of chance as a separate claim, but rather as a theory of negligence. *See, e.g.*, *Sharp v. Kaiser Found. Health Plan of Colo.*, 710 P.2d 1153, 1156 (Colo. App. 1985), *aff'd*, 741 P.2d 714 (Colo. 1987) (finding in a medical malpractice case that "it is left to the jury to decide whether there is a probability that defendants' negligence was a cause in fact of that loss [of chance to avoid the harm].""). Here, the Court interprets Plaintiffs' claim of Loss of Chance not as a separate claim in and of itself or a claim for right of survival, but rather as a theory of negligence, which is permissible under Colorado law. Accordingly, there is no claim for this Court to dismiss.

**D. The Court Will Not Dismiss the Loss of Consortium Claim (Count IV).**

Plaintiffs seek damages for loss of consortium. Doc. 1 at ¶¶ 70–74. FC argues that the loss of consortium claim is unavailable here because the Supreme Court of Colorado has held that deprivation of filial consortium is not an available cause of action under Colorado common law,

apart from damages available under the Wrongful Death Act. Doc. 19 at 17 (citing *Elgin v. Bartlett*, 994 P.2d 411, 417 (Colo. 1999)). FC also argues that Charlie Hallum cannot seek damages for loss of consortium with himself. *Id.* Plaintiffs cite New Mexico law, listing elements that they would have to prove for a loss of consortium claim in New Mexico, and expand upon the issue of foreseeability. Doc. 42 at 12–13. They concede that "Charlie Hallum cannot legally claim loss of consortium." *Id.* at 12.

The common law of Colorado does not recognize a child's right to consortium damages for loss of an *injured* parent's society and companionship. *See Lee v. Colorado Dep't of Health*, 718 P.2d 221 (Colo. 1986). This holding has also been applied to a parent's filial consortium claim for injury to a child. *Elgin v. Barlett*, 944 P.2d 411, 418 (Colo. 1999). As discussed in *Elgin*, the Supreme Court of Colorado defers to the General Assembly in the matter of consortium claims. *Id.* To that end, the General Assembly *has* authorized claims for loss of consortium in *wrongful death* cases. In 1989, the General Assembly amended the Colorado Wrongful Death Act and expanded the categories of damages recoverable in wrongful death actions. *Id.* (citing ch. 13, art. 21, § 203, 1989 Colo. Sess. Laws 752). The amended statute allows for recovery of damages for "grief, loss of companionship, pain and suffering, and emotional stress, to the surviving parties who may be entitled to sue." *Id.*

In this case, the Court will not dismiss the Wrongful Death claim (Count III) as nonactionable [*see supra* Part C(a)] and, as such, a Loss of Consortium claim is still viable under Colorado law. However, the Court agrees—and Plaintiffs concede—that Charlie Hallum cannot have a Loss of Consortium claim with himself. The Court will therefore dismiss the claim only as it applies to Charlie Hallum.

**E. The Court will Dismiss the Unfair Trade Practices Claim (Count V) With Prejudice.**

FC argues that, because Colorado law applies, New Mexico laws cannot give rise to a claim for relief. Doc. 19 at 18. Although FC provides no legal support for this assertion, this district has found that when applying another state's law, claims pursuant to New Mexico statute would be dismissed for failure to state a claim under the law of the state the court is applying. *See, e.g.*, *Lee v. Cont'l Cas. Co.*, No. CV 04-0049 WJ/RHS, 2005 WL 8164232, at *2 (D.N.M. Mar. 24, 2005) (holding in a Motion for Determination of Choice of Law that, where the laws of the State of Texas governed both the contract and tort claims, any claims of relief brought pursuant to New Mexico statutes were necessarily dismissed).

Once a court determines the choice-of-law under New Mexico's place-of-wrong rule, it must also evaluate whether such application would violate New Mexico public policy. *See Torres*, 894 P.2d at 390 (citing *Wittkowski*, 710 P.2d at 95). "Mere differences among state laws should not be enough to invoke the public policy exception." *Reagan v. McGee Drilling Corp.*, 933 P.2d 867, 869 (N.M. Ct. App. 1997).

Here, Plaintiffs seek relief for Defendants' alleged violation of the New Mexico Unfair Practices Act ("NMUPA"). By virtue of this Court's determination that Colorado law applies to this tort action, claims for relief brought pursuant to New Mexico law, including the NMUPA, must necessarily be dismissed for failure to state a claim upon which relief can be granted. That such a claim is potentially unavailable under Colorado law is not sufficient to invoke the public policy exception.

**F. The Court will Dismiss With Prejudice the Physician Battery Claim (Count VII), as it Pertains to FC.**

It is unclear from the Complaint which claims apply only to FC, only to Ms. Rhien, only to Dr. Pallister, or some combination thereof. As Dr. Pallister is listed explicitly in Count VII [Doc. 1 at ¶ 90] and the rest of the claim refers to a defendant, singular, the Court believes that Count VII applies only to Dr. Pallister. Dr. Pallister has separately brought a Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) [Doc. 20], which was granted by this Court [Doc. 132]. Accordingly, Count VII, as it applies to Dr. Pallister, has already been dismissed from this action. To the extent that Plaintiffs intended, through Count VII, to bring a vicarious liability action against FC for Dr. Pallister's conduct, the Court must dismiss this count under Colorado's "corporate practice of medicine doctrine." *See supra* Part A.

**G. The Court Need Not Rule on FC's Argument to Dismiss the Negligent Infliction of Emotional Distress Claim (Count VIII).**

FC argues Count VIII should be dismissed because there is no allegation that any Plaintiff was in the zone of danger and feared for his or her safety. Doc. 19 at 18. There is no need for the Court to address this argument, as Plaintiffs have withdrawn their negligent infliction of emotional distress claim. Doc. 46; *see also* Docs. 130, 131.

**H. The Court will Dismiss Without Prejudice the Negligent Hiring, Retention, and Training/Supervision Claims (Counts IX and X).**

FC argues that Counts IX and X should be dismissed because there are no facts alleged in the Complaint that support a plausible claim for negligent hiring, retention, or training/supervision. Doc. 19 at 19. As to both Dr. Pallister (Count IX) and Ms. Rhien (Count X), Plaintiffs "merely conclusorily [*sic*] plead the elements" without citing any facts to support their claims. *Id.*

In response, Plaintiffs incorrectly cite the general pleading standard adopted by New Mexico courts. Doc. 42 at 17. This action, however, is before a federal district court, which follows the federal pleading standard discussed above. The federal pleading standard requires "more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In order to prove a claim of negligent hiring and retention, a plaintiff must allege "the usual elements of negligence—duty, breach, injury, causation—and the establishment of an agency relationship between the employer and the alleged employee." *Nielsen v. Archdiocese of Denver*, 413 F. Supp. 2d 1181, 1183 (D. Colo. 2006) (citation omitted). In addition, the employer will be found liable for negligent hiring and retention if, at the time of hiring, the employer had reason to believe that hiring the employee in question would create an undue risk of harm to others. *Van Osdol v. Vogt*, 908 P.2d 1122, 1133 (Colo. 1996). In examining a negligent hiring and retention claim, "the court does not inquire into the employer's broad reasons for choosing this particular employee for the position, but instead looks to whether the specific danger which ultimately manifested itself could have reasonably been foreseen at the time of hiring." *Id.*

In Colorado, an employer who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm can be held directly liable to third parties for harm proximately caused by the employee's conduct. *Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988). To maintain a claim for negligent supervision, a plaintiff must establish that the employer had reason to believe that an undue risk of harm would exist because of the employment. *Id.*; *see also Kahland v. Villarreal*, 155 P.3d 491, 493 (Colo. Ct. App. 2006).

Here, Plaintiffs must allege that FC had a reason to believe that Dr. Pallister and/or Ms. Rhien created an undue risk of harm to others. *Kahland*, 155 P.3d at 493. The Complaint fails to

do this, and rather does no more than recite the elements of the claim. *See* Doc. 1 at ¶¶ 96–106, ¶¶ 107–117. Even the factual background does not include allegations that either Dr. Pallister or Ms. Rhien had a history that would suggest they would be a risk to patients, or that, if they did, FC was aware of any such history. Without factual allegations that support their claim, Plaintiffs have failed to meet the requisite pleading standard. *Twombly*, 550 U.S. at 555. Plaintiffs' claims for negligent hiring and supervision must therefore be dismissed without prejudice as to Dr. Pallister (Count IX) and Ms. Rhien (Count X).

## I. The Court will Strike the Claim for Punitive Damages (Count XI).

FC argues that, under Colorado law, a claim for punitive damages is barred by Colorado law, pursuant to Colorado Revised Statutes section 13–20–101. Doc. 19 at 21. FC goes on to state that a claim for punitive damages is not a separate claim for relief, and that the inclusion of a claim for punitive damages in the Complaint violates section 13–64–302.5(3) of the Colorado Revised Statutes. *Id.* at 22.

Plaintiffs do not respond to FC's argument for dismissal under 12(b)(6) or request that the claim otherwise be stricken pursuant to Rule 12(f)(2) as "immaterial and impertinent at this early stage" of the case. Docs. 19 at 22; 42.

The Colorado statute governing exemplary damages in civil actions involving harm to a person or property provides that such a claim "may not be included in any initial claim for relief. A claim for exemplary damages in an action governed by [Colo. Rev. Stat. § 13–21–102] may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13–21–102(1.5)(a). The Tenth Circuit has also found that "punitive damages" does not constitute an independent claim, but instead is "part and parcel of a

liability determination[.]" *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991). Thus, a claim for exemplary damages is inappropriate at this juncture and must be stricken pursuant to Rule 12(f). *See, e.g.*, *United States Welding, Inc. v. Tecsys, Inc.*, No. 14-CV-00778-REB-MEH, 2014 WL 10321666 at *20–21 (D. Colo. Dec. 1, 2014); *Luciano v. Perez*, No. 06-CV-01284-PSF-PAC, 2007 WL 1306476 at *5 (D. Colo. May 3, 2007).

## CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs have, under Colorado law, failed to state a claim upon which relief can be granted in all but Counts I, II, III, IV, and VI. All other counts shall be dismissed for failure to state a claim.

In their motion, FC fails to support their request for attorney fees and costs with any legal doctrine. Therefore, the Court twill not award attorney fees.

**IT IS THEREFORE ORDERED** that Four Corners, OB/GYN's Motion for Partial Dismissal of Plaintiffs' Claims Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 19], is granted in part and denied in part as follows: Counts I, II, III, IV, and VI remain viable as to FC. Count I may be pursued only on behalf of Tanya Hallum, while Counts III and IV may be pursued by Tanya and Jesse Hallum. Counts IX and X are dismissed without prejudice; and Counts V and VII are dismissed with prejudice**.**

DATED this 18th day of March, 2019.

_____
MARTHA VÁZQUEZ
United States District Judge